Douglas Dwight **BENNETT**, Plaintiff,

v.

Michael **BATCHIK**, et al., **Defendants.**

No. 89–73248–DT.

United States District Court, E.D. Michigan, S.D.

July 27, 1990.

Douglas D. Bennett, Walled Lake, Mich., pro se.

John H. Dise, Jr., Dise, Gurewitz & Irving, Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

This matter is before the Court on motion for summary judgment filed by defendants Batchik, Patterson, Nichols, and Jones. Defendants David and Audrey Steinhoff have also filed a separate motion to dismiss, or in the alternative, for summary judgment. Plaintiff has responded and both motions are ripe for review. This Court will set forth the facts and then discuss each motion separately.

## FACTS

Plaintiff, Douglas D. Bennett, has brought this suit in *pro se* against Michael Batchik, 52–1 District Court Judge for the State of Michigan, L. Brooks Patterson, Oakland County Prosecuting Attorney, John Nichols, Oakland County Sheriff, Dr. John Jones, Probation Director of Oakland County and David and Audrey Steinhoff. Plaintiff has brought this law suit under 42 U.S.C. § 1983 in order to seek damages for alleged constitutional violations. Plaintiff was a cement contractor installing concrete curbing (Plaintiff's Complaint, paragraph 2). Co-defendants David and Audrey Steinhoff contracted with plaintiff in June of 1984 for installation of a steel seawall at their home in Union Lake. Mr. and Mrs. Steinhoff paid plaintiff a $1,000.00 deposit. Plaintiff thereafter began the work and ordered certain materials. However, prior to completion of the project, defendants David and Audrey Steinhoff called plaintiff and indicated they were dissatisfied with the seawall and wanted their money back. (Plaintiff's Complaint, paragraph 9). Plaintiff claims he went to the Steinhoff home in order to recover equipment and alleges that David Steinhoff refused to allow him to remove any of the equipment. (Plaintiff's Complaint, paragraph 12). Apparently a shoving match occurred. Plaintiff contends that David Steinhoff returned from his home with a rifle and told the plaintiff to leave the premises. (Plaintiff's Complaint, paragraph 13). Plaintiff called the Oakland County Sheriff's Department and was thereafter allowed to recover his personal property. (Plaintiff's Complaint, paragraph 16).

Mr. and Mrs. Steinhoff then filed a formal complaint with the Oakland County Prosecuting Attorney. Thereafter, a warrant was issued on September 26, 1984 by the 52–1 Judicial District Court, County of Oakland, State of Michigan, naming Douglas Dwight Bennett as the defendant and charging him with being an unlicensed contractor. On March 3, 1985, Mr. Bennett was stopped by Southfield police for driving a motor vehicle with an expired license plate. After a record check, the police officer was advised that plaintiff's driver's license was suspended and that there was a warrant for his arrest involving the Steinhoff's complaint. (Plaintiff's Complaint, paragraph 19). On that same day, plaintiff was arraigned in the 46th District Court for the County of Oakland, State of Michigan. Bond was posted on the two charges in Southfield and bond was posted on the Oakland County warrant involving the Steinhoffs. Mr. Bennett was then released.

Mr. Bennett was tried in the 52–1 District Court located in the city of Walled Lake, Michigan on the charge of being an

unlicensed contractor. The jury found plaintiff guilty of being an unlicensed contractor. (Plaintiff's Complaint, paragraph 22). Co-defendant, the Honorable Michael Batchik, ordered plaintiff to report to the Oakland County District Court's Probation Department for evaluation. Plaintiff complied and was then sentenced to probation for one year and accessed fines and costs of $510.00, ordered to pay probation oversight expenses in the sum of $300.00 and ordered to pay restitution in the amount of $1,000.00 to Mr. and Mrs. Steinhoff. (Plaintiff's Complaint, paragraph 24). Plaintiff did not appeal this order.

On October 29, 1985, plaintiff reported to his probation officer and signed the Order of Probation. After speaking with a friend, plaintiff believed that by signing his Order of Probation he had entered into a contractual agreement. Thereafter, on November 4, 1985, plaintiff filed a Notice of Avoiding of a Contract, known as Prosecution Order No. 84–66727, docket # 84–003118. Apparently, plaintiff believed that this would effectively void the Order of Probation he had signed.

On January 13, 1986, Judge Batchik dismissed plaintiff's Notice of Avoiding of a Contract, and ordered plaintiff to pay probation expenses and restitution. (Plaintiff's Complaint, paragraph 30). Mr. Bennett failed to report to probation or comply with the judge's order. Mr. Bennett's probation was then cancelled and a bench warrant for his arrest was issued by the court. On October 28, 1987, Mr. Bennett was arrested by two Oakland County Sheriff's deputies. (Plaintiff's Complaint, paragraph 33). Mr. Bennett was again released on bond and ordered to report to the 52–1 District Court on the date stated on his bond receipt. Mr. Bennett then appeared in the District Court before Judge Batchik and was ordered to pay all costs and restitution or be incarcerated. As of November 4, 1987, Mr. Bennett had paid the fines and restitution and the case was closed. Plaintiff then brought this suit.

In Count I of the complaint, plaintiff essentially seeks the contract costs. Plaintiff alleges he did not hold himself out as a licensed contractor. Plaintiff claims a license is not required to install cement and, therefore, plaintiff seeks $2,080.00. According to plaintiff, the state may only act to protect the safety, health, morals or welfare of the general public. Plaintiff claims that because he did not represent himself to be a licensed contractor, he now has a right to recover the contract cost. (Plaintiff's Complaint, Count I).

Count II of the complaint alleges a conspiracy to violate plaintiff's constitutional right to contract. Plaintiff claims the police report filed with the Oakland County Sheriff's Department by Deputy Richardson includes language which was favorable toward the Steinhoffs. Accordingly, plaintiff seeks damages for slander as well as damages for destruction to his credibility as a result of the actions of defendants John Nichols and Deputy Richardson. Plaintiff seeks $2,000.00 in compensation. (Plaintiff's Complaint, Count II).

Count III of the complaint asserts the existence of a conspiracy between co-defendants Audrey and David Steinhoff and the Oakland County Prosecuting Attorney. According to plaintiff, this conspiracy existed to intervene in a legal contract between Mr. Bennett and the Steinhoffs. Because of the existence of this conspiracy, plaintiff claims he was forced to defend himself in a criminal prosecution causing mental anguish, court costs, legal expenses, loss of pay, arrests and incarceration. In addition, plaintiff asserts that in order to avoid being incarcerated, he was ordered to pay all restitution and court costs. Accordingly, plaintiff seeks $750,000.00 in damages.

## STANDARD OF REVIEW

Summary judgment is appropriate where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. *Blakeman v. Mead Containers*, 779 F.2d 1146 (6th Cir.1986); Fed.R.Civ.P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essen-

tial to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In applying this standard, the Court must view all materials offered in support of a motion for summary judgment, as well as all pleadings, depositions, answers to interrogatories, and admissions properly on file in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *United States v. Diebold,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Cook v. Providence Hosp.,* 820 F.2d 176, 179 (6th Cir.1987); *Smith v. Hudson,* 600 F.2d 60 (6th Cir.1979), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). In deciding a motion for summary judgment, the Court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512. Although summary judgment is disfavored, this motion may be granted when the trial would merely result in delay and unneeded expense. *Poller v. Columbia Broadcasting Systems, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *A.I. Root Co. v. Computer/Dynamics, Ind.,* 806 F.2d 673, 675 (6th Cir.1986). Where the non-moving party has failed to present evidence on an essential element of their case, they have failed to meet their burden and all other factual disputes are irrelevant; thus, summary judgment is appropriate. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552; *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (Footnote omitted)).

## I.

▮ Defendants Michael Batchik, 52–1 District Court Judge for the State of Michigan, L. Brooks Patterson, Oakland County Prosecutor, John Nichols, Oakland County Sheriff and Dr. John Jones, Director of the Oakland County District Court's Probation, move for summary judgment. These defendants claim that Judge Michael Batchik of the 52–1 District Court has absolute immunity from 1983 actions. According to defendants, all actions performed by Batchik were within the scope of his official court authority or discretion. As a result, defendants submit the judge enjoys absolute immunity from 42 U.S.C. § 1983 actions. Defendants point out that plaintiff's only conversation with the judge was in the courtroom. (Deposition of Plaintiff, page 38). According to plaintiff's deposition testimony, the judge violated plaintiff's Fourth, Fifth and Fourteenth Amendment rights in making adverse evidentiary rulings during plaintiff's trial and in ordering restitution as part of a criminal sentence. (Deposition of Plaintiff, pages 40–42). Defendants assert that all of these actions are clearly within the scope of judicial authority and, therefore, move to dismiss plaintiff's complaint as to Judge Batchik.

Plaintiff claims Judge Batchik lost his immunity because the judge executed his own will and did not apply the law. Plaintiff claims that Judge Batchik's actions benefited the Steinhoffs and not the State. This Court is not persuaded by plaintiff's argument.

▮ Certain classes of individual defendants may avail themselves of the doctrine of immunity. Immunity in its purest form is known as "absolute immunity," while a more temperate version of immunity is known as "qualified immunity." The essential difference between the two types of immunity is that absolute immunity requires an inquiry only into the functional status of the defendant, while qualified immunity typically necessitates an inquiry into the defendant's state of mind. In most instances, an action against an absolutely immune defendant may be dismissed on motion setting out the defendant's status as well as an allegation of action within his official capacity. See generally, Nahmod, *Civil Rights and Civil Liberties Litigation,* § 701 *et seq.* (1979).

■ Among the various classes of persons who are absolutely immune from suits for damages under § 1983, are state and regional legislators, prosecutors and judges. Immunity was traditionally given to legislators to help insure the policies underlying the speech or debate clause, Article I, Section 6, of the United States Constitution. Legislators acting within a "traditional legislative capacity" are immune from § 1983 damages. *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). Thus, any inquiry into legislative motive is irrelevant, and the remedies for any corruption must be found within the political process and the criminal laws. *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974).

■ Borrowing similar concepts of immunity from the historical common law as in *Tenney, supra,* the Supreme Court established the right of public prosecutors to absolute immunity in *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Under *Imbler,* prosecutors are absolutely immune from tort liability with respect to their decisions to initiate and conduct prosecutions as well as with respect to their advocacy functions in the criminal process. As with *Tenney, supra,* the policy underlying *Imbler* is the securing of independent and undeterred discretion in the initiation of criminal prosecutions as well as the securing of all relevant evidence. 424 U.S. at 426, 96 S.Ct. at 993.

Also deeply rooted in history and relevant for purposes of the instant motion is the absolute immunity accorded to members of the judiciary. This principal was first set forth by the Supreme Court in *Bradley v. Fisher,* 13 Wall. 335, 20 L.Ed. 646 (1872), wherein the court recognized the need for absolute immunity in order to protect judges from lawsuits claiming that their decisions had been tainted by improper motives. Thus, in order to maintain "that independence without which no judiciary can either be respectable or useful," *Id.* 13 Wall. at 347, the court held judges to be immune from civil suit in cases where they were exercising their judicial functions within the general scope of their juris-

diction. Moreover, since constitutional immunity for state officials is the mirror image of that for federal officials, the Supreme Court extended the absolute immunity doctrine to state judges sued on federal constitutional claims. *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

This Court finds that defendant, Judge Batchik, is absolutely immune from 42 U.S.C. § 1983 actions. The acts complained of by plaintiff were performed in Judge Batchik's official duty as a judge. Evidentiary rulings and orders granting restitution and/or fines are clearly within the exclusive authority or discretion of a judge. These actions may serve as the basis of an appeal, but do not create any liability pursuant to 42 U.S.C. § 1983.

■ According to the complaint, plaintiff asserts that the Oakland County Prosecutor wrongfully prosecuted the criminal case against plaintiff. According to his deposition testimony, plaintiff brought this suit against defendant L. Brooks Patterson because people that worked for Mr. Patterson prosecuted a criminal complaint against Mr. Bennett. (Deposition of Plaintiff, page 47). The relevant portion of plaintiff's deposition testimony states as follows:

Q: The reasons you are saying that L. Brooks Patterson is included is because people that work for him filed a criminal complaint against you, is that what you are saying?

A: No, no, no, they didn't—

Q: Or prosecuted a criminal complaint against you?

A: Correct.

Q: Did they do anything else that you feel was improper other than prosecuting this criminal complaint against you?

A: The only conduct he can be held liable for is the initiation of the criminal complaint, and as far as the actions taken by the prosecutor, they were merely following the directory of the prosecutor. I should say of L. Brooks Patterson.

Based on this reasoning, defendants claim that the only actions alleged to be improper

by plaintiff are the prosecution of the criminal action against plaintiff. Therefore, defendant L. Brooks Patterson, and any other assistant prosecuting attorney under his direction, claim to have absolute immunity from civil actions under 42 U.S.C. § 1983. This Court agrees. As previously stated, decisions by a State Prosecuting Attorney on whether to initiate and/or pursue a criminal prosecution are also absolutely immune from a civil suit. *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Joseph v. Patterson,* 795 F.2d 549 (6th Cir.1986).

■ Defendants claim that Dr. John Jones, as Director of Oakland County Probation, has absolute immunity from § 1983 actions. According to defendants, a probation officer who acts pursuant to state statutory duty to provide presentence reports is covered by the absolute judicial immunity doctrine. Defendants also assert that a probation officer is at least entitled to quasi-judicial immunity from § 1983 actions where he or she files a petition seeking arrest, since such an action is a discretionary function pursuant to the official law enforcement duties of the probation officer. Defendants contend that the only basis for naming Dr. Jones as a defendant was due to the fact that an employee of the Probation Department, Debbie McAleer, made demands on the plaintiff which were allegedly improper. Defendants point to plaintiff's deposition testimony wherein plaintiff claims that Ms. McAleer demanded that plaintiff pay the fines that the judge imposed, as well as the oversight fees and restitution. Plaintiff also testified during his deposition that the probation officer advised him that should he fail to pay, additional action would be taken. (Defendant's Motion for Summary Judgment, page 10). Defendants assert that these actions, alleged to be improper by plaintiff, constitute the job of a probation officer. Defendants claim that Dr. Jones, and/or his employee, Debbie McAleer, have at least qualified immunity for their actions. Defendants assert that Dr. Jones and Debbie McAleer actually have absolute immunity for their actions since they were acting pursuant to an order of sentencing by the court and, therefore, were only performing the work required of them in their positions as probation officers. As a result, defendants claim plaintiff's complaint should be dismissed with respect to Dr. Jones.

Plaintiff alleges that a probation officer improperly demanded that plaintiff pay the fines the judge had imposed and make restitution according to the judge's order or else face the possibility of additional action. This Court finds that defendant Dr. Jones and/or his employees are immune for such a discretionary function. Not only was the probation officer acting pursuant to a state statute, but as defendants point out, the probation officer was only demanding plaintiff to follow the court's order. As a result, this Court finds that defendant Dr. Jones and/or his employee probation officers are absolutely immune from suit pursuant to 42 U.S.C. § 1983. In the alternative, this Court finds those defendants are at least entitled to quasi-judicial immunity. The probation officer's only motive was that of enforcing the judge's sentence.

■ Finally, defendants assert that John Nichols cannot be held vicariously liable for the acts of deputy sheriffs for an alleged deprivation of civil rights under 42 U.S.C. § 1983. Defendants claim that respondeat superior is inapplicable in § 1983 actions. In order for John Nichols to be held liable under 42 U.S.C. § 1983, defendants assert that he must be either personally involved in the acts causing the deprivation of plaintiff's constitutional rights, or there must be a causal connection between the actions of the police chief or sheriff and the constitutional violations sought to be redressed.

Defendants assert that the complaint fails to state any allegations showing Sheriff Nichols was personally involved in the alleged acts which caused the deprivation of plaintiff's civil rights. Likewise, defendants submit that plaintiff's complaint contains no allegations of a causal connection between the acts of Sheriff Nichols and the alleged constitutional violations of the deputies. Accordingly, defendants assert that plaintiff has failed to state a claim upon which relief can be granted. Sheriff Nichols has no connection or involvement in

**1252**

plaintiff's legal difficulties. Defendants also contend plaintiff has no claim against the John Doe deputy sheriffs. This Court ordered plaintiff to name the two John Doe defendants by April 2, 1990. Plaintiff failed to do so. Despite this fact, defendants claim that plaintiff has no claim against the John Doe arresting officers. Those officers lawfully arrested plaintiff on a valid bench warrant.

This Court agrees with defendants. Plaintiff's allegations against John Nichols do not allege sufficient personal involvement. Personal involvement is a prerequisite of liability under § 1983. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Liability under § 1983 cannot be established on the basis of respondeat superior. *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). Liability of supervisory personnel in § 1983 suits must be based on more than the right to control employees. *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.1984), *cert. den.,* 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1985). A plaintiff must show:

> that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

Plaintiff has not made any such showing in this case. It is plaintiff's responsibility, even in *pro se* cases, to properly plead his allegations with requisite specificity. *Wells v. Brown,* 891 F.2d 591 (6th Cir. 1989). In plaintiff's complaint, he has failed to show any personal involvement on behalf of John Nichols or the existence of any causal connection between the actions of the sheriff's deputies and Sheriff John Nichols.

Pursuant to this Court's Order, plaintiff was required to name the John Doe defendants as of April 2, 1990. Plaintiff has failed to do so. In any event, this Court finds that plaintiff has no claim against the John Doe sheriff's deputies.

Plaintiff's complaint asserts no facts which would support any type of constitutional violation. The John Doe sheriff's deputies arrested defendant based on a valid arrest warrant. Plaintiff has pled no other facts which would show any constitutional violations occurred. Without a constitutional violation, there can be no action pursuant to 42 U.S.C. § 1983. *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). For the above-mentioned reasons, this Court grants the motion for summary judgment filed by defendants Batchik, Patterson, Nichols and Jones.

**II.**

Defendants David and Audrey Steinhoff have filed a motion to dismiss, or in the alternative, for summary judgment. The Steinhoffs have addressed their motion as a motion to dismiss pursuant to Fed.R. Civ.P. 12 for failure to state a claim upon which relief can be granted. This type of motion tests the legal sufficiency of the plaintiff's complaint. *Davey v. Tomlinson,* 627 F.Supp. 1458, 1463 (E.D.Mich.1986). In evaluating the propriety of a dismissal under Rule 12(b)(6), the factual allegations in the complaint must be treated as true. *Janan v. Trammel,* 785 F.2d 557, 558 (6th Cir.1986). Plaintiff's claims shall not be dismissed unless it is established that the plaintiff cannot prove beyond doubt any set of facts to support his claim that would entitle him to relief. *Janan,* 785 F.2d at 558. The federal rules only require the complaint to state a claim, not prove a claim.

Defendants David and Audrey Steinhoff claim that plaintiff's only constitutional claim against them is based solely upon Mrs. Steinhoff's filing of a complaint against plaintiff for the practice of an occupation without a license. Defendants claim that the exhibits and accompanying motion indicate that defendant Audrey Steinhoff justifiably filed her complaint against plaintiff. Defendants claim Audrey Steinhoff acted within her rights under the laws of the State of Michigan. According to the Steinhoffs, plaintiff's conduct unquestionably violated the Occupational Code of Mi-

chigan, MCLA 339.2401 et seq. Therefore, the Steinhoffs were entitled to restitution pursuant to MCLA 339.602.

■ For the reasons that follow, this Court grants defendants' motion to dismiss, or in the alternative, for summary judgment. This Court finds that plaintiff has, in fact, failed to state a claim upon which relief may be granted. Plaintiff has failed to state a claim which would allow him to recover pursuant to either § 1983 or § 1985.

As private citizens, defendants David and Audrey Steinhoff are incapable of acting under color of state law. In addition, plaintiff has failed to satisfy the race class based animus requirements of § 1985. Most importantly, this Court finds that plaintiff has failed to allege any violation of a constitutional or federally secured right. As defendants have noted, an attack on plaintiff's reputation alone is insufficient to implicate any liberty or property interest or invoke the procedural protection of the Fourteenth Amendment Due Process Clause. Moreover, this Court will not hear a State law tort claim without a constitutional violation.

■ Upon consideration of the facts set forth in plaintiff's complaint, this Court finds the Steinhoffs did not violate plaintiff's constitutional rights. In his answer to the Steinhoff's motion for summary judgment, plaintiff attempts to deal with the issue of good faith. Plaintiff claims the Steinhoffs did not act in good faith. However, this Court is not persuaded by plaintiff's argument. Plaintiff's conduct was in violation of Michigan law and, therefore, the Steinhoffs were entitled to restitution pursuant to Michigan law. The fact that the Steinhoffs pursued this matter in State Court in order to receive restitution is not a violation of plaintiff's constitutional right. The question of whether plaintiff was or was not a licensed contractor has been litigated in State Courts. No appeal was taken. Plaintiff does not now have any cause of action against the Steinhoffs.

Accordingly, after an evaluation of the factual allegations in plaintiff's complaint, this Court concludes that plaintiff cannot prove beyond doubt any set of facts to support his claim that would entitle him to relief. *Janan*, 785 F.2d at 558. Therefore, this Court GRANTS defendants David and Audrey Steinhoff's motion to dismiss under Fed.R.Civ.P. 12.

## CONCLUSION

Based upon all the foregoing, this Court hereby GRANTS the motion for summary judgment filed by defendants Batchik, Patterson, Nichols and Jones. In addition, this Court hereby GRANTS the motion to dismiss filed by David and Audrey Steinhoff. Accordingly, this case is DISMISSED.

IT IS SO ORDERED.